# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS

-------------------------------------------------------------- X
MERLE R. MILLS, On Behalf of Himself and All Others Similarly Situated,

                        Plaintiff,

v.

ROBBINS & MYERS, INC., THOMAS P. LOFTIS, PETER C. WALLACE, STEPHEN F. KIRK, DALE L. MEDFORD, ANDREW LAMPEREUR, RICHARD J. GIROMINI, ALBERT J. NEUPAVER, RAVEN PROCESS CORP. AND NATIONAL OILWELL VARCO, INC.,

                        Defendants.

-------------------------------------------------------------- X

Case No. __4:12-cv-2962_____

CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND INDIVIDUAL CLAIMS FOR VIOLATION OF SECTION 14(A) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

**JURY TRIAL DEMANDED**

       Plaintiff, by his undersigned attorneys, alleges upon personal knowledge with respect to, himself and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

       1.     Plaintiff brings this action individually, and on behalf of the public shareholders of Robbins & Myers, Inc. ("R&M" or the "Company") against certain officers and/or directors of R&M, and other persons and entities (collectively, "Defendants") involved in a proposed transaction through which the Company will be acquired by National Oilwell Varco, Inc. ("NOV"), through NOV's wholly-owned subsidiary for inadequate consideration (the "Proposed Transaction") for breaches of fiduciary duty, and aiding and abetting such breaches of fiduciary

1

duties under state law and individual claims for violation of §14(a) and §20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act").

2.      On August 8, 2012, R&M entered into a Definitive Agreement and Plan of Merger ("Agreement" or "Proposed Transaction") pursuant to which a wholly-owned subsidiary of NOV will acquire all of the outstanding stock of R&M in a transaction valued at $2.54 billion. The Proposed Transaction is anticipated to close in the fourth quarter of 2012.

3.      Under the terms of the Agreement, which has been unanimously approved by the Company's Board of Directors ( the "Board"), stockholders will receive $60.00 per share for all outstanding shares of the Company's common stock.

4.      As described below, both the value to R&M shareholders contemplated in the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other public shareholders of the Company.  The Individual Defendants' (defined herein) conduct constitutes a breach of their fiduciary duties owed to the Company's public shareholders, and a violation of applicable legal standards governing the Individual Defendants' conduct.

5.      Furthermore, on August 31, 2012, R&M filed a Schedule 14A Preliminary Proxy Statement ("Preliminary Proxy" or "Proxy") with the Securities and Exchange Commission ("SEC") elaborating on the terms of the Proposed Transaction, as well as describing the sales process and the fairness opinion issued by, Citigroup Global Markets Inc., ("Citi"), R&M's financial advisor. As described *infra*, the Preliminary Proxy fails to provide R&M shareholders with material information concerning, *inter alia*, the sales process and absence of underlying methodologies, projections, key inputs and multiples in the financial advisor's fairness opinion to determine the fairness and reasonableness of the Proposed Transaction. Without judicial

intervention before the Company's shareholders vote on the Proposed Transaction, and/or the closing of the Proposed Transaction, Plaintiff and other R&M shareholders will suffer imminent harm and irreparable injury as they must decide whether and how to cast their votes without all material information necessary to make an informed vote on the Proposed Transaction.

6.      Since this information is material to the Company's public shareholders' upcoming decision, Defendants' (defined below) conduct constitutes violations of the Exchange Act.

7.      Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, and in the event the Proposed Transaction is consummated, recover damages resulting from Defendant's conduct. Additionally, Plaintiff seeks to enjoin Defendants from seeking shareholder approval of the Proposed Transaction until they comply with their state fiduciary duties of loyalty, good faith, care & candor and regulations under the Exchange Act requiring the Board to provide shareholders with all material information necessary to make the statements contained in the Proxy not false and misleading.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C §1331 in that Plaintiff's claims arise in part under the Constitution and laws of the United States, including §14(a) and §20(a) of the Exchange Act.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because one or more of the Defendants, including R&M, either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint occurred in substantial part in this District. Finally, the defendants have received substantial

compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

10.     Plaintiff Merle R. Mills is and at all relevant times was the owner of R&M common stock.

11.     R&M is a corporation organized and existing under the laws of the State of Ohio, with a principal executive office address of 10586 Highway 75 N, Willis, TX 77378.  R&M is a leading supplier of engineered equipment and systems for critical applications in global energy, industrial, chemical and pharmaceutical markets.  R&M's stock is listed on the New York Stock Exchange under the symbol "RBN."

12.     Defendant Thomas P. Loftis ("Loftis") has been a Director of the Company since 1987.  Loftis has been Chairman of the Board of the Company since June 2004 and served as Vice Chairman of the Board from March 2004 to June 2004.

13.     Defendant Peter C. Wallace ("Wallace") is and has been a Director of the Company since 2004. Wallace has been President and Chief Executive Officer of the Company since July 12, 2004.

14.     Defendant Stephen F. Kirk ("Kirk") is and has been a Director of the Company since 2006.

15.     Defendant Dale L. Medford ("Medford") is and has been a Director of the Company since 2003.

16.     Defendant Andrew Lampereur ("Lampereur") is, and has been a Director of the Company since 2007.

4

17.     Defendant Richard J. Giromini ("Giromini") is and has been a Director of the Company since 2008.

18.     Defendant Albert J. Neupaver ("Neupaver") is and has been a Director of the Company since 2009.

19.     The defendants identified in ¶¶ 12-18 are referred to herein as the "Individual Defendants."

20.     Defendant NOV is a Delaware corporation with its principal place of business located at 7909 Parkwood Circle Dr., Houston, TX, 77036.  NOV is a worldwide leader in providing major mechanical components for land and offshore drilling rigs, complete land drilling and well servicing rigs, tubular inspection and internal tubular coatings, drill string equipment, extensive lifting and handling equipment, and a broad offering of downhole drilling motors, bits and tools. NOV also provides supply chain services through its network of distribution service centers located near major drilling and production activity worldwide.

21.     Defendant Raven Process Corp. is an Ohio corporation and a wholly owned subsidiary of NOV.

22.     Defendants NOV and Raven Process Corp. are collectively referred to herein as "NOV."

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action on his own behalf and as a class action, pursuant to Rule 23, on behalf of himself and the public shareholders of R&M (the "Class") who are being and will be irreparably harmed by Defendants' actions described below. Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

24.     This action is properly maintainable as a class action under Rules 23(b) (1) and 23(b) (2) of the Federal Rules of Civil Procedure.

25.     This action is properly maintainable as a class action because:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of August 7, 2012, there were 42,140,805 shares of R&M common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country. The exact number of shareholders will be ascertained through discovery.

(b)     Questions of law and fact are common to the Class, including, among others:

(i)      whether Defendants violated the federal securities laws by the acts alleged herein;

(ii)     whether the Proxy for the Proposed Transaction is misleading;

(iii)    whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction complained of herein consummated based upon the Proxy; and

(iv)     whether Plaintiff and the other members of the Class have been harmed.

(c)     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

(d)     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has no interests adverse to the Class;

(e)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

(f)     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

(g)     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this action.

## SUBSTANTIVE ALLEGATIONS

### Background

26.     R&M, a leading supplier of engineered equipment and systems for critical applications in global energy, industrial, chemical and pharmaceutical markets, was founded in 1878.

27.     The Company's Fluid Management segment designs, manufactures, markets, repairs, and services equipment and systems for use in oil and gas exploration and recovery, specialty chemical, wastewater treatment, and other industrial applications.  This segment's products and systems include hydraulic drilling power sections; blow-out preventers; pressure control systems; wellhead equipment; frac manifolds and trees; high pressure engineered gate valves; down-hole and industrial progressing cavity pumps and related products, such as grinders for applications involving the flow of slurries and sludge; fluid-agitation equipment and systems; and various ancillary equipment for the energy sector consisting of rod guides, rod and tubing rotators, wellhead systems, pipeline closure products, and valves.

28.     Its Process Solutions segment designs, manufactures, and services glass-lined reactors and storage vessels. This segment also provides alloy steel vessels, heat exchangers, other fluid systems, wiped film evaporators, and packaged process systems; and offers

customized fluoropolymer-lined fittings, vessels, and accessories primarily to pharmaceutical and specialty chemical markets.

**The Proposed Transaction**

29.     On August 9, 2012, R&M issued a press release announcing it had entered into the Agreement pursuant to which NOV would acquire R&M in a cash transaction valued at approximately $2.5 billion. The press release stated in relevant part:

> Robbins & Myers, Inc. (NYSE:RBN) and National Oilwell Varco, Inc. (NYSE:NOV) have entered into an agreement under which National Oilwell Varco will acquire Robbins & Myers in an all cash transaction that values Robbins & Myers at approximately $2.5 billion. Under the agreement, Robbins & Myers' shareholders will receive $60.00 per share in cash in return for each of the approximately 42.4 million shares outstanding ("the Transaction"). The Boards of Directors of National Oilwell Varco and Robbins & Myers have unanimously approved the transaction, which is subject to customary closing conditions, including the approval of two-thirds of Robbins & Myers shareholders. Closing would be expected to occur in the fourth quarter of calendar 2012.

> Robbins & Myers' largest shareholder, M.H.M. & Co., Ltd, which owns approximately 10% of the outstanding common shares of Robbins & Myers ("Common Stock") has agreed to vote its Common Stock in favor of the Transaction in accordance with the terms of a support agreement entered into in respect of the Transaction. The support agreement will terminate in the event the merger agreement is terminated in accordance with recommendation of the Board of Robbins & Myers.
> * * *
> Mr. Pete Miller, Chairman, President and CEO of National Oilwell Varco, remarked, "Robbins & Myers has many complementary products with those National Oilwell Varco currently offers the industry. I am particularly enthusiastic about the prospect of incorporating their downhole tools, pumps and valves into National Oilwell Varco Petroleum Services & Supplies and Distribution & Transmission segments. We feel that our combined manufacturing infrastructure and portfolios of technology will further advance our presence in the oil and gas markets we serve. We are extremely excited about this combination and look forward to welcoming a very talented group of employees into the National Oilwell Varco family."
> * * *
> In connection with this transaction, Citigroup Global Markets acted as lead financial advisor and Thompson Hine LLP acted as legal advisor to

Robbins & Myers. Fulbright & Jaworski LLP acted as legal advisor to National Oilwell Varco.

30.     The consideration offered in the Proposed Transaction to the Company's public stockholders is unfair and grossly inadequate because, among other things, the intrinsic value of R&M's common stock is materially in excess of the amount offered for those securities in the Proposed Transaction given the Company's prospects for future growth and earnings.

31.     While rival companies have suffered through the U.S.'s shift in rig activity from targeting low-priced natural gas to high-priced oil, R&M has excelled.   According to *Investors.com*, R&M has recorded six straight quarters of double-digit or triple-digit revenue and profit gains.  In the second quarter, the Company's earnings shot up 35% and its revenue jumped 39%.  Additionally, R&M ended the quarter with $159 million in cash, despite spending $79 million in share buybacks. Operating profit in the quarter grew 68%.

32.     NOV recognized R&M's outstanding performance and potential for growth and is seeking to benefit from the Company's growth, while the Company's shareholders receive inadequate consideration without the benefit of a full and fair sales process

33.     In addition, the inequity of the Proposed Transaction is magnified by the exorbitant payments and benefits that Individual Defendants will receive as change-in-control and termination payments in connection with the Proposed Transaction, so long as the Merger occurs. These payments will be received by the Company's management, while neither Plaintiff, nor any other public shareholder of R&M will enjoy the same benefits at the close of the Proposed Transaction. *(See chart below)*.

| Name (a) [1] | Cash ($) (b) [2] | Equity ($) (c) [3] | Pension/ NQDC ($) (d) [4] | Perquisites/ Benefits ($) (e) [5] | Tax Reimbursement ($) (f) [6] | Total ($) (h) [7] |
|---|---|---|---|---|---|---|
| Peter C. Wallace, President & Chief Executive Officer | 4,640,800 | 5,431,554 | 0 | 20,437 | 0 | 10,092,791 |
| Kevin J. Brown, Interim Chief Financial Officer, | 452,250 | 526,984 | 0 | 15,328 | 0 | 994,562 |
| Saeid Rahimian, Senior Vice President & President, Energy Services Group | 858,900 | 1,667,742 | 0 | 15,328 | 0 | 2,541,970 |
| Jeffrey L. Halsey, Vice President, Human Resources | 541,785 | 731,826 | 0 | 15,328 | 0 | 1,288,939 |

34.     Moreover, under the Merger Agreement, certain executive officers' and board member's vested Restricted Stock Shares, as defined in the Proxy (including certain Restricted Stock Shares with respect to which vesting will accelerate in connection with the Merger), will be cancelled and converted into the right to receive an amount in cash, without interest and subject to any withholding taxes, equal to $60 for each share of Common Stock in respect of such Restricted Stock Share. (*See chart below*).

| Executive | Stock Options | Restricted Share Units | Performance Share Awards |
|---|---|---|---|
| Peter C. Wallace | $1,428,594 | $1,437,240 | $2,565,720 |
| Kevin J. Brown | $124,864 | $213,240 | $188,880 |
| Saeid Rahimian | $429,102 | $463,680 | $774,960 |
| Jeffrey L. Halsey | $198,186 | $176,880 | $356,760 |

| Name | Restricted Stock (#) | Value of Restricted Stock ($) (a) | Restricted Share Units (#) | Value of Restricted Share Units ($) (a) | Stock Options (#) | Value of Stock Options ($)(b) | Performance Shares (#) (c) | Value of Performance Shares(a) | Total ($) |
|---|---|---|---|---|---|---|---|---|---|
| **Peter C. Wallace,** President and Chief Executive Officer | -0- | -0- | 23,954 | $1,437,240 | 50,156 | $1,428,594 | 42,762 | $2,565,720 | $5,431,554 |
| **Kevin J. Brown,** Interim Chief Financial Officer | -0- | -0- | 3,554 | 213,240 | 5,681 | 124,864 | 3,148 | 188,880 | 526,984 |
| **Saeid Rahimian,** Senior Vice President and President Fluid Management Group | -0- | -0- | 7,728 | 463,680 | 15,023 | 429,102 | 12,916 | 774,960 | 1,667,742 |
| **Jeffrey L. Halsey,** Vice President, Human Resources | -0- | -0- | 2,948 | 176,880 | 6,954 | 198,186 | 5,946 | 356,760 | 731,826 |
| **Aaron H. Ravenscroft,** Vice President and President Process & Flow Control Group | 9,666 | 579,960 | 1,900 | 114,000 | 7,270 | 170,772 | 1,900 | 114,000 | 978,732 |
| **Michael J. McAdams,** Treasurer | 1,000 | 60,000 | -0- | -0- | -0- | -0- | -0- | -0- | 60,000 |
| **Linn S. Harson,** Corporate Secretary and General Counsel | -0- | -0- | -0- | -0- | -0- | -0- | -0- | -0- | -0- |
| **Richard J. Giromini,** Director | 1,199 | 71,940 | -0- | -0- | -0- | -0- | -0- | -0- | 71,940 |
| **Stephen F. Kirk,** Director | 1,199 | 71,940 | -0- | -0- | -0- | -0- | -0- | -0- | 71,940 |
| **Andrew G. Lampereur,** Director | 1,199 | 71,940 | -0- | -0- | -0- | -0- | -0- | -0- | 71,940 |
| **Thomas P. Loftis,** Director and Chairman of the Board | 1,199 | 71,940 | -0- | -0- | -0- | -0- | -0- | -0- | 71,940 |
| **Dale L. Medford,** Director | 1,199 | 71,940 | -0- | -0- | -0- | -0- | -0- | -0- | 71,940 |
| **Albert J. Neupaver,** Director | 1,199 | 71,940 | -0- | -0- | -0- | -0- | -0- | -0- | 71,940 |

35.     These substantial payments to Individual Defendants make clear the true motivations of the Individual Defendants in entering into the Proposed Transaction.

**The Preclusive Deal Protections**

36.     As part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

37.     Under §5.4 of the Merger Agreement, the "No Solicitation" provision, bars the Board and any Company personnel from attempting to procure a price in excess of the amount offered by NOV.  Section 5.4(a) of the Merger Agreement further demands that the Company terminate any and all prior or on-going discussions with other potential suitors.  This provision effectively forecloses the possibility that the Company would receive a superior bid.

38.     Pursuant to §5.4(b) of the Merger Agreement, should an unsolicited bidder arise, the Company shall, "as promptly as reasonably practicable, provide to [NOV] any material information" concerning R&M that was provided or made available to the third party bidder which was not previously provided or made available to NOV.

39.     Pursuant to §5.4(c), R&M is similarly required to notify NOV in writing, as promptly as reasonably practicable, if the Company receives a written Acquisition Proposal or any inquiry that would reasonably be expected to lead to an Acquisition Proposal.  R&M must also keep NOV informed, in all material respects, of the status and details of any such Acquisition Proposal.

40.     Accordingly, the Merger Agreement unfairly assures that any "auction" will favor NOV and piggy-back upon the due diligence of the foreclosed third-party bidder.

41.     Additionally, the Proposed Transaction provides for a "Termination Fee" of $75,000,000 to be paid in cash if the Agreement is terminated by the Company or by NOV pursuant to the terms of the Merger Agreement, including in the event that Company decides to pursue a superior offer.

42.     The Termination Fee amounts to approximately 3% of the equity value of the deal and essentially requires that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer. Thus, it is unlikely that any such superior offer would emerge.

43.     Ultimately, these preclusive deal protection devices illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited alternative acquisition proposal that constitutes, or would

reasonably be expected to constitute, a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

## THE MATERIALLY MISLEADING AND INCOMPLETE
## PRELIMINARY PROXY STATEMENT

44.     The Individual Defendants are withholding material information regarding the Proposed Transaction from R&M shareholders. The Proxy, pursuant to which the Board has recommended that Company shareholders vote in favor of the Proposed Transaction, contains numerous material omissions and misstatements in contravention of the Board's duty of candor and thereby renders the Company's shareholders unable to cast an informed vote regarding the Proposed Transaction.

*Disclosures Related to the Events Leading*
*up to The Announcement of the Proposed Transaction*

45.     The Preliminary Proxy states that "In December 2011, following a meeting in which Citi presented various strategic alternatives to our management team, it was decided that we should have a more robust discussion regarding specific alternatives to increase shareholder value." Moreover, the Preliminary Proxy at page 29 states that:  "We asked Citi to assist us in assessing strategic alternatives in advance of the regular meeting of our Board of Directors in January, 2012." … "On January 5, 2012, at our Board of Directors' regularly scheduled meeting, Peter C. Wallace, our President and Chief Executive Officer, reviewed with our Board of Directors information compiled by Citi regarding possible strategic alternatives. These alternatives included share repurchases, acquisitions and business combinations." … "After a lengthy discussion, our Board of Directors determined … [that] we should contact a small number of strategically positioned companies to gauge interest, if any, in combining with us."

(i)     The  Preliminary Proxy needs the following additional disclosures:

a.     a complete disclosure of the various strategic alternatives that Citi discussed with R&M's Board.

b.     a complete disclosure on the acquisition alternatives that were discussed between Citi and the Company's Board.

c.     detail on the process undertaken to determine which "strategically positioned companies" would be contacted to "gauge interest" in the Company.

d.     details on how the investment banker selected the nine companies.

e.     details on why Citi selected these nine companies and of the nine companies selected how many were strategic buyers and how many were financial buyers.

f.     details as to why the Board supported a business combination rather than the other strategic alternatives discussed (*i.e.* share repurchases and acquisitions).

46.    The Proxy states "Citi performed a discounted cash flow analysis … [t]he estimated present value of the standalone unleveraged, after-tax free cash flows that we could generate from September 1, 2012 through August 31, 2017 was calculated based on internal estimates provided to Citi by our management." … "Mr. Brown provided our Board of Directors with forecasts for our Energy Services Group and Process & Flow Control Group and on a consolidated basis through fiscal 2015."  The proxy needs the following disclosures:

(i)    the forecasts for the Company's Energy Services Group and Process & Flow Group that were provided to the Board at the June 25, 2012 meeting.

(ii)    a detailed discussion why the Board considered one set of projections to evaluate the Proposed Transaction and why a second set of projections were analyzed by Citi for its fairness opinion.

### *Negotiations with NOV*

47.    In addition to the numerous disclosures mentioned above, the Preliminary Proxy is deficient and needs further disclosure as to the negotiations between R&M and NOV. The Preliminary Proxy needs the following disclosure:

14

> (i)    disclose any prior dealings that NOV or Mr. Merrill A. Miller had with Mr. Wallace prior to March 14, 2012.
>
> (ii)    a complete discussion as to whether financial buyers were contacted; and if no financial buyers were contacted, disclose why Citi and the Board restricted the number of potential buyers by not contacting financial buyers.

48.    The Preliminary Proxy states "On May 9, 2012, our Board of Directors held a special telephonic meeting to discuss the May 8, 2012 non-binding indication of interest from NOV." … "After the representatives of Citi left the meeting, our directors engaged in a lengthy discussion regarding the energy markets, alternatives for growth and strategic direction." … "It was ultimately decided that we would inform NOV that a price in excess of $62.00 per share to be paid in cash would be necessary to proceed with discussions regarding a possible combination.   The Preliminary Proxy needs the following disclosures:

> (i)    details on the alternatives for "growth and strategic direction" discussed by the Board.
>
> (ii)    a complete discussion of the analysis used by the Company's board to arrive at a price of $62.00 per share.
>
> (iii)    a complete discussion of the reason that the Board believed a cash transaction was more beneficial to shareholders than a mixed cash and stock transaction or all stock transaction.
>
> (iv)    details regarding the selection of Citi as the Company's financial advisor in connection with the Proposed Transaction, including whether the Board interviewed other investment banks to act as its financial advisor on the Proposed Transaction.
>
> (v)    a complete discussion of why the strategic alternatives were favored over a standalone basis.
>
> (vi)    a detailed discussion on the process by which the Board agreed to certain restrictions imposed in the Merger Agreement that may "delay or prevent (the Company) from undertaking business opportunities that may arise pending completion of the merger."
>
> (vii)    a complete discussion on the considerations used to arrive at the need for, and the amount of, the termination fee.

> (viii)  a complete discussion of the definition of "Superior Proposal" in the context of the ability of the Company's Board to pursue alternative transactions.

### *Citi's Potential Conflict of Interest*

49.     The Preliminary Proxy fails to disclose material information concerning Citi's services provided in the Proposed Transaction, as well as, previous relationship between Citi and NOV. The Preliminary Proxy needs the following disclosures:

> (i)    a detailed discussion on how the Board arrived at an aggregate fee of $17.8 million for Citi's services in relation to the Proposed Transaction.
>
> (ii)   a detailed discussion as to Citi's previous services to NOV unrelated to the Proposed Transaction.
>
> (iii)   disclose in detail Citi's participation in an existing loan to NOV.
>
> (iv)   disclose in detail Citi and its affiliates' expected compensation for previous services provided to NOV.

### *Citi's Fairness Opinion*

50.     The Preliminary Proxy fails to disclose all of the underlying methodologies, projections, key inputs and multiples relied upon and observed by Citi, which are necessary for shareholders to evaluate and properly assess the credibility of the various analyses performed by Citi and relied upon by the Board in recommending the Proposed Transaction. In particular, the Preliminary Proxy is deficient and should provide, *inter alia,* the following information in connection with Citi's financial analysis:

> (i)    In the *Discounted Flow Analysis*, the Company should disclose: (1) the assumptions Citi used to calculate a perpetual growth rate of 2.0% to 3.0%; (2) actual and equalized depreciation, amortization, and capital expenditures; and (3) the risk free rate, market risk premium, beta, corporate bond rate, and any other assumptions relied upon to determine the WACC of 11.0% -13.0% along with the sources of that information.

(ii)   In the *Selected M & A Transactional Analysis*, the Company should disclose: (1) the transaction value and premiums associated with each listed M & A transaction; (2) the target's TTM revenue and TTM EBITDA for each listed M & A transaction; (3) the median and mean EBITDA multiples for both EBITDA ranges for each listed M & A transaction; and (4) why Citi chose a multiple range of 7.0x to 12.0x as compared to each transaction.

(iii)   In the *Selected Public Company Analysis*, the Company should disclose: (1) the metrics Citi chose to use in deeming the selected companies comparable to RBN versus other market participants in the Flow Control and Energy Markets; (2) the enterprise value, LTM revenue, and EBITDA for years 2012 and 2013 for each selected company; (3) based on the listed median EBITDA multiple for the LTM, 2012, and 2013, disclose how Citi selected EBITDA multiple range; and (4) the low, median, mean, and high premiums observed in the *Selected Public Company Analysis* and indicate if the premiums were from the same set of transactions as those used in the selected M & A transactions analysis or from another set of transactions.

### *Certain Prospective Financial Information*

51.   The Preliminary Proxy states "'Unleveraged free cash flows' means EBIT (which is EBITDA (as defined below) less tax depreciation and amortization), less cash taxes at an assumed rate of 33%, plus tax depreciation and amortization, less capital expenditures and less increases in working capital." The Preliminary Proxy needs the following disclosure:

(i)   each of the components and key inputs that make up the Unleveraged free cash flows analysis.

52.   The Company should disclose the major assumptions used to complete the financial projections, including the basis for revenue growth and changes in EBITDA as a percentage of revenue.

53.   The Company should disclose any other financial forecasts or projections provided to the Board during its evaluation of the Proposed Transaction along with any other projections provided to NOV.

54.      Absent this material information, Plaintiff and all other R&M shareholders will not have all the necessary information to make a fully informed decision on how to vote their shares regarding the Proposed Transaction.

55.      Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## COUNT I

### On Behalf of Plaintiff and the Class for Breach of Fiduciary Duties
### Against the Individual Defendants

56.      Plaintiff repeats and realleges each and every allegation set forth herein.

57.      The Individual Defendants have violated their fiduciary duties owed to the public shareholders of R&M and have acted to put their personal interests ahead of the interests of R&M shareholders or acquiesced in those actions by fellow defendants.  These Individual Defendants have failed to take adequate measures to ensure that the interests of R&M shareholders are properly protected and have embarked on a process that avoids competitive bidding and provides NOV with an unfair advantage by effectively excluding other alternative proposals.

58.      By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, will unfairly deprive Plaintiff and other members of the Class of the true value of their R&M investment.  Plaintiff and other members of the Class will suffer irreparable harm unless the actions of the Individual Defendants are enjoined and a fair process is substituted.

59.      The Individual Defendants have breached their duties of loyalty, good faith, candor and care by not taking adequate measures to ensure that the interests of the Company's shareholders are properly protected from over-reaching by NOV.

18

60.     By reason of the foregoing acts, practices, and courses of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

61.     Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding the Proposed Transaction.

62.     As a result of the actions of Defendants, Plaintiff and the Class have been, and will be, irreparably harmed in that they have not, and will not, receive their fair portion of the value of R&M's stock and businesses, and will be prevented from obtaining a fair price for their common stock.

63.     Unless enjoined by this Court, the Individual Defendants will continue to breach the fiduciary duties owed to Plaintiff and the Class and may consummate the Proposed Transaction to the disadvantage of the public shareholders.

64.     The Individual Defendants have engaged in self-dealing, have not acted in good faith, and have breached, and are breaching, fiduciary duties owed to Plaintiff and the other members of the Class.

65.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which these actions threaten to inflict.

## <u>COUNT II</u>

### On Behalf of Plaintiff and the Class Against NOV for Aiding and Abetting <br> the Individual Defendants' Breaches of Fiduciary Duties

66.     Plaintiff repeats and realleges each and every allegation set forth herein.

67.     The Individual Defendants breached their fiduciary duties to the R&M shareholders by the actions alleged *supra*.

68.     Such breaches of fiduciary duties could not, and would not, have occurred but for the conduct of defendant NOV, which, therefore, aided and abetted the Individual Defendants' breaches.

69.     Defendant NOV had knowledge that it was aiding and abetting the Individual Defendants' breaches of fiduciary duties to R&M shareholders.

70.     Defendant NOV rendered substantial assistance to the Individual Defendants in their breaches of their fiduciary duties to R&M shareholders.

71.     As a result of NOV's conduct of aiding and abetting the Individual Defendants' breaches of fiduciary duties, Plaintiff and the other members of the Class have been, and will be, damaged in that they have been, and will be, prevented from obtaining a fair price for their shares.

72.     As a result of the unlawful actions of NOV, Plaintiff and the other members of the Class will be irreparably harmed in that they will be prevented from obtaining the fair value of their equity ownership in the Company.  Unless enjoined by the Court, NOV will continue to aid and abet the Individual Defendants' breaches of their fiduciary duties owed to Plaintiff and the members of the Class, and will aid and abet a process that inhibits the maximization of shareholder value and the disclosure of material information.

73.     Plaintiff and the other members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from immediate and irreparable injury which Defendants' actions threaten to inflict.

## COUNT III

### On Behalf of Plaintiff for Violations of Section 14(a) of the Exchange Act Against the Company and the Individual Defendants

74.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual.

75.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

76.     Defendants have issued the Preliminary Proxy with the intention of soliciting shareholder support for the Proposed Transaction.

77.     Rule 14a-9, promulgated by the SEC pursuant to §14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

78.     Specifically, the Preliminary Proxy violates §14(a) and Rule 14a-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render it non-misleading.

79.     The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff, who will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. As a direct and proximate result of Defendants' conduct, Plaintiff will be irreparably harmed.

## COUNT IV

**On Behalf of Plaintiff for Violations of Section 20(a) of the Exchange Act
Against the Individual Defendants**

80.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual.

81.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

82.     The Individual Defendants acted as controlling persons of R&M within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of R&M, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Preliminary Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

83.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Preliminary Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Preliminary Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Merger.  They were, thus, directly involved in the making of this document.

85.     In addition, as the Preliminary Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Merger.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

86.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

87.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

88.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a class action and certifying Plaintiff as Class representative;

B.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless corrective disclosures are made by Defendants and disseminated to the Company's shareholders.

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

D.       Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  October 3, 2012

**BROTHERS, SEPULVEDA & ALVARADO, P.C.**
By:  */s/ Karen M. Alvarado*
            Karen M. Alvarado
Two Memorial City Plaza
820 Gessner, Suite 1075
Houston, Texas 77024
Tel: 713- 337-0750
Fax: 713- 337-0760
Email: kalvarado@brothers-law.com


**FARUQI & FARUQI, LLP**

Juan E. Monteverde
Shane R. Rowley
369 Lexington Ave., 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: jmonteverde@faruqilaw.com
Email: srowley@faruqilaw.com

*Attorneys for Plaintiff*